**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Allonzo Trier,
Plaintiff,
v.
Glen E Wright, II, et al.,
Defendants.

No. CV-25-00055-TUC-AMM (MSA)

**REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff Allonzo Trier's motion to preclude Defendants' rebuttal experts. The motion has been fully briefed and is suitable for decision without oral argument. For the following reasons, the Court will recommend that the motion be denied.

**I. Background**

This breach of contract action is brought by Plaintiff against his former financial advisor, Defendant Glen Wright, and Wright's business, Defendant Worth Financial Advisory Group LLC. In brief, Plaintiff alleges that Defendants breached their contract with Plaintiff and their fiduciary duties by steering Plaintiff away from a low, fixed-rate mortgage toward a variable-rate line of credit secured by Plaintiff's brokerage account, resulting in significant financial loss to Plaintiff. (Doc. 1 at 9–13.)

The Court entered a scheduling order on April 15, 2025. (Doc. 19.) Relevant here, the scheduling order provides:

> 4. **<u>Expert Discovery:</u>** The deadline for Plaintiff's initial expert disclosures is **November 21, 2025**. The deadline for Defendants' initial expert disclosures is **January 9, 2026**. The deadline for rebuttal expert

> disclosures is **January 30, 2026**. Rebuttal experts shall be limited to responding to opinions stated by initial experts. Expert discovery, including depositions of experts, must be completed no later than **February 27, 2026**.

(*Id.* at 2.)

On November 21, 2025, Plaintiff disclosed the reports of his standard-of-care expert, Matt Muehlebach, and his damages expert, the accounting firm of Keegan Linscott. (Doc. 44-1.) Defendants did not provide any expert disclosures on January 9, 2026. But on January 30—the rebuttal expert deadline—Defendants disclosed the reports of Gerald Loftin and Michael Deeba. (Doc. 44-5.) Defendants retained Loftin to rebut the opinions of Muehlebach and Deeba to rebut the opinions of Keegan Linscott. (*See id.*)

Believing that Loftin and Deeba should have been disclosed on January 9, Plaintiff's counsel wrote a letter to Defendants' counsel asserting that the reports were untimely and contrary to "Plaintiff's exclusive right to rebuttal." (Doc. 44-2.) Defendants' counsel responded that the January 9 deadline was for "initial" experts, and that Defendants had no initial experts. (Doc. 44-3.) He further stated that the rebuttal expert deadline was for both parties to offer rebuttal to the other sides' initial experts, making it proper to disclose Loftin and Deeba on that date. (*Id.*) Plaintiff's counsel responded with disagreement. (Doc. 44-4.) The motion to preclude followed. (Doc. 44.)

## II. Discussion

Plaintiff argues that Loftin's and Deeba's reports were not timely disclosed. He also argues that neither is a proper rebuttal expert. As the second issue is determinative of the first, the Court will address these issues in reverse.

### A. Loftin and Deeba are proper rebuttal experts.

Plaintiff argues that Loftin's and Deeba's proposed testimony is not proper rebuttal testimony. (Doc. 44 at 5–6; Doc. 46 at 5–7.) The Court disagrees.

Rebuttal expert testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified by" an opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). Proper rebuttal includes challenges to an opposing expert's methodology, underlying assumptions, and the completeness of the information on which the expert

relied. *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 332 (D. Ariz. 2022) (quoting *Smilovits v. First Solar, Inc.*, No. CV12-00555-PHX, 2019 WL 6875492, at *13 (D. Ariz. Dec. 17, 2019)). "Rebuttal testimony cannot be used to advance new arguments or new evidence." *Avila v. Ford Motor Co.*, 796 F. Supp. 3d 593, 598 (N.D. Cal. 2025) (quoting *Huawei Techs. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018)).

**1. Loftin**

Plaintiff's standard-of-care expert, Matt Muehlebach, opines that Defendants fell below the standard of care applicable to professional financial advisors when they steered Plaintiff away from a fixed-rate mortgage. (Doc. 44-1 at 5.) In his report, Loftin describes the standard of care for a certified financial planner; points out uncertainties in Muehlebach's assumption that Plaintiff would have qualified for a mortgage; discusses information not considered by Muehlebach (i.e., notes created during or after meetings with Plaintiff and his mother reflecting Defendants' advice that Plaintiff should not purchase a home while unemployed and that Plaintiff needed to curtail his spending); and opines, "[c]ontrary to the opinion of" Muehlebach, that Defendants met the standard of care. (Doc. 44-5 at 36–44.)

Plaintiff argues that "Loftin offers initial opinions on the core issues of whether Defendants breached their standard of care and damages," and that because such "opinions go to anticipated and disputed elements of Plaintiff's claims, Defendants were required to disclose him as an initial expert." (Doc. 44 at 6.) This argument relies on *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979), where the court stated that "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." But *Morgan* is not binding or persuasive. That case involved a pretrial witness list, not expert disclosures; "[i]ndeed, the rules requiring expert disclosures were not enacted until 14 years after it was decided." *U.S. Bank, N.A. v. Glogowski Law Firm, PLLC*, 339 F.R.D. 579, 582 (W.D. Wash. 2021). Further, *Morgan* is not consistent with Rule 26; nothing in the rule excludes expert testimony merely because

the opposing party anticipated the issue or could have offered the opinion in its case-in-chief. *See id.* at 583 (stating that "[n]othing" in Rule 26 "limits contradictory evidence to evidence that addresses an unforeseen opinion"). The question is whether Loftin's testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by" Muehlebach. Fed. R. Civ. P. 26(a)(2)(D)(ii). The answer is yes: Muehlebach opines that Defendants fell below the standard of care for a professional financial advisor; Loftin challenges a key assumption underlying Muehlebach's opinion—that Plaintiff qualified for a 3% mortgage—and opines that Defendants met the standard of care.

Plaintiff also argues, in a conclusory manner, that Loftin's opinions "are based on Wright's internal self-serving notes—a conduit for hearsay." (Doc. 44 at 4.) But experts may rely on hearsay so long as the hearsay is of the type that an expert would normally and reasonably rely on. Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *see Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) (en banc) ("[E]xperts are entitled to rely on hearsay in forming their opinions."). Plaintiff does not suggest that an expert would not rely on notes prepared by a financial advisor during or following a financial planning meeting. And considering that the notes reflect Defendants' financial advice to Plaintiff—the core issue of this case—it is hard to see why such notes would not be relevant to an expert's analysis.

Plaintiff also says that Loftin (and Deeba) "dodge" the testimony of Ingrid Quinn, a mortgage officer who discussed the possibility of a mortgage with Plaintiff's mother. (Doc. 44 at 5.) Quinn testified that she was "confident" Plaintiff would have qualified for a mortgage. (*Id.*) Plainly, an expert opinion is not inadmissible merely because the opposing party thinks the expert did not give enough weight to information favorable to the opposing party. The adequacy of an expert's weighing of competing evidence goes to the weight of the opinion, not its admissibility. Further, Loftin's report indicates that Quinn was not as confident as Plaintiff says, as she testified that her "understanding was limited to preliminary discussions," and that she "needed an application to properly evaluate the

situation and identify any additional documentation requirements." (Doc. 44-5 at 37.)

In his reply, Plaintiff asserts that because Loftin did not read the depositions of Plaintiff or his mother, Loftin "does not contradict the *evidence* why the [variable-rate line of credit] was unreasonable." (Doc. 46 at 6.) But the "evidence" referred to in Rule 26 is Muehlebach's report itself, not the information he considered in making the report. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (providing that a rebuttal report must "contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)"); Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of an initial expert's report). Loftin responds to and rebuts Muehlebach's report by challenging his assumptions and by opining, based on notes made at or near the time of the events giving rise to this case, that "[c]ontrary to the opinion of Plaintiff's Expert, Glen Wright adhered to the Standard of Care as a Certified Financial Planner practitioner in all aspects of the client-advisor relationship with Allonzo Trier." (Doc. 44-5 at 44.)

**2. Deeba**

Plaintiff's damages expert, Keegan Linscott, conducted a comparative financial analysis and opined that Plaintiff lost around $143,000 by going with the line of credit instead of a mortgage. (Doc. 44-1 at 13–19.) In his report, Deeba describes accounting standards applicable to economic damages calculations, which require that calculations be based on reliable or reasonably certain information; opines that a key assumption of Keegan Linscott—that Plaintiff would have qualified for a fixed-rate mortgage—rests on numerous unknowns testified to by Quinn during her deposition; and further opines that other assumptions (e.g., that the mortgage would have been at 3.2%) lack documentation or support. (Doc. 44-5 at 4–19.)

Plaintiff argues that Deeba's testimony is not proper rebuttal because he does not "rebut how Plaintiff's expert calculated damages" but rather challenges assumptions made by Plaintiff's expert. (Doc. 44 at 4, 6.) But "[c]hallenging the assumptions of an expert witness'[s] report is a permissible topic of rebuttal testimony." *SiteLock LLC*, 562 F. Supp. 3d at 332 (quoting *Smilovits*, 2019 WL 6875492, at *13). Plaintiff also accuses Deeba of

making a legal argument by applying a "reasonable certainty" standard. (Doc. 44 at 4.) But Deeba explains that he is applying accepted accounting standards, including the American Institute of Certified Public Accountants' "reasonable certainty" standard, to opine that Keegan Linscott's damages opinions are not based on reliable information. (Doc. 44-5 at 9, 11.) This is proper rebuttal testimony. (*See* Doc. 45 at 5–6.) Plaintiff further accuses Deeba of making a credibility determination as to Quinn. (Doc. 44 at 4.) But Deeba merely recites Quinn's testimony, which indeed reflects uncertainty about the likelihood of Plaintiff obtaining a 3.2% mortgage. (*See* Doc. 44-5 at 15–17.) For instance, while Plaintiff makes much of Quinn's testimony that she was "confident" Plaintiff would qualify, she also testified that she and Plaintiff's mother "didn't get that far into the process," that her confidence was based solely on information provided by Plaintiff's mother, that she had not corroborated that information, and that she needed a mortgage application to see what was being presented. (*Id.* at 16–17.)

Next, Plaintiff argues that Deeba's testimony runs afoul of *Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946). (Doc. 44 at 4; Doc. 46 at 2.) There, the Supreme Court held that when the plaintiff establishes that the defendant's wrongful conduct caused injury, the defendant cannot escape liability merely because its wrongful conduct has made the precise amount of damages difficult to prove. *Bigelow*, 327 U.S. at 264–66. That said, the jury still "may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly." *Id.* at 264. Plaintiff argues that because Defendants were the reason he did not pursue a mortgage, they should be "estopped" under *Bigelow* from relying on any uncertainty associated with the mortgage process. (Doc. 44 at 4; Doc. 46 at 2.)

This argument reflects a misunderstanding of what *Bigelow* actually decided. That case held that a wrongdoer may not escape liability where its own misconduct has made the amount of damages difficult to prove. While it relieves the plaintiff of the burden of proving damages with precision, it does not relieve him of his burden to present evidence sufficient to permit "a just and reasonable estimate" of damages. *Bigelow*, 327 U.S. at 264.

A rebuttal expert who opines that the plaintiff's damages model is not reasonably certain is not contradicting *Bigelow*; rather, the expert is disputing whether the plaintiff has satisfied the standard that *Bigelow* itself requires. Deeba's opinion, if accepted, would assist the jury in determining whether Plaintiff has produced the type of evidence from which "a just and reasonable estimate" can be made. *Id.* Plaintiff's view of *Bigelow* would effectively insulate his expert from legitimate methodological criticism. Nothing in *Bigelow* supports that result.

* * *

In summary, the Court finds that Loftin's and Deeba's testimony are proper rebuttal testimony.

**B. Defendant's rebuttal expert disclosures were timely.**

Plaintiff argues that Defendants were required to serve their rebuttal expert reports on January 9. (Doc. 44 at 3.) He is incorrect. The scheduling order, which was drafted by the undersigned magistrate judge, intentionally distinguishes between "initial" experts and "rebuttal" experts. This is because Federal Rule of Civil Procedure 26 separates experts based on the content of their reports. Specifically, it distinguishes between experts offered as part of a party's affirmative case (what this Court is referring to as an "initial" expert) and experts offered "solely to contradict or rebut evidence on the same subject matter" as an initial expert (a "rebuttal" expert). Fed. R. Civ. P. 26(a)(2)(B), (D).

The scheduling order set three expert deadlines: one on November 21, 2025, for "Plaintiff's initial expert disclosures" on whatever issues he deemed appropriate; one on January 9, 2026, for "Defendants' initial expert disclosures" on whatever issues they deemed appropriate; and one on January 30 for either party to disclose "rebuttal" expert testimony challenging the other side's "initial" experts. (Doc. 19 at 2.) So, Defendants are correct that their rebuttal expert disclosures were due on January 30. (Doc. 45 at 7.)

Plaintiff asserts repeatedly that he has the exclusive "right of rebuttal" in expert discovery. (Doc. 44 at 2, 5; Doc. 46 at 1, 2, 3, 7.) But he offers no authority importing trial-order concepts into Rule 26, and Rule 26 is party-neutral. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii)

(providing when "[a] party" must disclose expert testimony that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party"). Regardless, the rule states that disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Plaintiff obviously disagrees with the framework set by the Court, but that framework is clear. Plaintiff simply misunderstood it.

Rebuttal expert disclosures were due on January 30. (Doc. 19 at 2.) As the Court finds that Loftin and Deeba are proper rebuttal experts, Defendants' disclosure of them on January 30 was timely.

## III. Conclusion

The Court recommends that Plaintiff's motion to preclude Loftin's and Deeba's testimony (Doc. 44) be **denied**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Civ. P. 72(b)(2). The parties have 14 days to file responses to objections. *Id.* The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). A party's objections or response to objections may not exceed 10 pages in length unless otherwise permitted by the district court. LRCiv 7.2(e)(3).

Dated this 14th day of July, 2026.

Maria S. Aguilera
Honorable Maria S. Aguilera
United States Magistrate Judge